————o————

5396.

(Court of appeal, Parish of Orleans.)

## S. J. MANKIN vs. PLANTERS FERTILIZER AND CHEMICAL COMPANY.

Issues of fact only are involved herein.

Appeal from the Civil District Court, Division "E."

Parkerson, Bruenn & Breazeale, for plaintiff and appellant.

Denegre, Blair and Chaffe, for defendant and appellee.

DUFOUR, J.—This is a suit to recover the balance due under a contract of sale of one thousand tons of phosphate rock purchased by defendant from plaintiff.

The defense denies that the rock delivered was of the quality provided for in the contract and claims that, according to the real value of the rock, the defendant, through error, has overpaid plaintiff to the extent of $470.71 which are now claimed in reconvention.

The written contract stipulates that the dried phosphate rock shall contain phosphoric acid equivalent to a minimum of 72% of bone phosphate of lime calculated on dry basis, and a maximum of 6½% oxide of iron and alumina combined. In the event that oxide of iron and alumina varies from 6½%, a deduction or addition on a basis of two units of bone phosphate of lime for one unit of oxide of iron and alumina shall be made from the total bone phosphate of lime shown in analysis and for each unit of bone phosphate of lime that this final result shall show less than the guarantee, an allowance to buyer shall be made on a basis of cost and freight price per unit delivered New Orleans.

The price agreed upon was $4.75 per ton of 2240 lbs. f. o. b.

The sampling was to be done by public sampler as goods are loaded aboard cars, who shall sample each car and, after shipment is completed, shall mix and reduce to one sample which shall be sealed and upon request of buyer sent to Dr. F. G. Smith, chemist, for analysis. In any event the f. o. b. sampling and Dr. F. G. Smith's analysis shall be final.

When defendant tendered proof to sustain his defense, it was objected to on the ground that it was an attempt to vary, alter or contradict the terms of the written lease which stipulated that the f. o. b. sampling and the analysis of Dr. F. G. Smith should be final.

The Judge correctly overruled the objection, holding that proof was admissible to show that the samples were not obtained in the way pointed out by the contract, and the analysis was not made by Dr. Smith.

It is admitted by both litigants that, of the sampling and analysis were made in accordance with the obligations of the contract, they are binding, but, if otherwise,

the plaintiff can recover only the actual value of the rock as shown by any proper subsequent sampling and analysis.

Without going into details of the plaintiff's evidence, it is sufficient to say that his witnesses do not show that the requirements as to sampling were complied with. The statements are vague and indefinite and the only positive declaration is that the rocks were sampled.

One of the witnesses says:

"I drew the samples by lookng at the rock and trying to get a proportionate part of each grade of rock that I found in the cars, as best I could, drawing about 75 ponds of the average rock of the car in the sample. I delivered the same to F. G. Smith for analysis."

Another says:

"I cannot say that I saw every one of the cars while it was being loaded. * * * The sampling was done by men under my authority and direction."

Such testimony is not competent to show that compliance was had with the requirements of the contract that the sampling must be done as goods are loaded aboard the cars, that each car must be sampled and that the whole must be mixed, reduced to one sample, sealed and sent to Dr. Smith.

It further appears that the analysis was not made by Dr. Smith exclusively, but jointly by him and his laboratory assistants, from samples drawn by his representative.

Dr. Metz, a local expert of high reputation, says that "the man who undertakes the estimation of phosphoric acid must see to the **completion** from beginning to end" and must do so by himself.

We have reached the conclusion that the sampling and analysis were not made in accordance with the terms of the contract.

There remains to consider the proof offered by defendant as to the actual value of the rock.

It is shown that, as the rock was unloaded in wheelbarrows, some was taken out as it came from the car to the extent of about 150 pounds to the car load. The stuff was mixed in a pile, divided into four, then mixed again and worked down to about fifteen or twenty pounds; from this the samples were taken. This is proved to be the customary method of sampling adopted and followed by factories.

One of these samples was sent **sub rosa** and without disclosure of its identity to Dr. Smith, through one A. H. George, of Meridan, Miss. Dr. Smith analyzed it and found a bone phosphate equivalent to about 54% a trifle less than the amount found by Dr Metz,, whose analysis was based on a sample from the same source

Based on the average findings of the several Metz analysis, there is found a total deficiency of 18.70 units; on this basis, the lower Court allowed the reconventional demand to the extent claimed.

Defendant claims that he was not given credit for 21,000 pounds contained in car 11148; the record shows that the contents of that car came from car 10083 which was overloaded. The aggregate contents of the two cars was about 75000 lbs.

The plaintiff complains that defendant's case rests on the testimony of its own employees and its own regularly employed chemist, Dr. Metz.

We see nothing intrinsically improbable in their statements and they were believed by the District Judge, who saw and heard them.

It is a significant fact, tending to show defendant's good faith, that when the plaintiff visited this city, defendant offered to draw a sample from the 500 tons of rock still on hand to be sent to any chemist chosen by the plaintiff for analysis, and the proposition was declined.

The judgment was against the plaintiff on the main demand and in favor of defendant on its reconventional demand.

Judgment affirmed.

January 22nd, 1912.

————o————

5457.

(Court of Appeals, Parish of Orleans.)